IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

| | | |
|---|---|---|
| ACCO BRANDS, INC. | § | |
| Vs. | § | CIVIL ACTION NO. 2:02-CV-112 |
| ABA LOCKS MANUFACTURER LTD., ET AL. | § | |

**MEMORANDUM OPINION AND ORDER**

**1.     Introduction and Procedural History.**

This opinion and order is intended to dispose of the remaining issues in this case. By way of background, this is a patent case involving computer security locks. The court originally tried this case to a jury from May 17-20, 2004. At the time of trial, the plaintiff asserted claims from two patents, the '989 patent and the '557 patent, against two products sold by the defendants. The accused products, the Key Lock and the Combo Lock, were similar, except that one locked under the control of a key and the other locked under the control of a combination. The defendant ABA Locks Manufacturer, Ltd., manufactures the accused products. Defendant Belkin is a distributor.

The jury returned a verdict on May 20, 2004. The jury found that the defendants had willfully infringed all of the asserted claims of the two patents. The jury rejected all of the defendants' invalidity challenges and failed to find that any of the asserted claims were invalid. The jury awarded damages against ABA Locks of $2,399,463 and against defendant Belkin of $1,791,048.

After the verdict, the defendants renewed their motions for judgment as a matter of law. The

court granted in part and denied in part these motions. In particular, the court granted judgment as a matter of law that the claim of the '557 patent were invalid over a piece of prior art. The court concluded that the evidence was insufficient as a matter of law to support the jury's implied finding that the patentee had shown diligence in reducing the invention to practice. The court denied the defendants' motion for judgment as a matter of law on all other grounds.

The court's holding that the '557 patent was invalid rendered the Combo Lock a non-infringing product. This is because the court had previously granted summary judgment that the Combo Lock did not infringe the asserted claims of the '989 patent. The jury, however, had not been asked to separately apportion damages for the Key Lock and the Combo Lock. Moreover, the Combo Lock, as a non-infringing product, would have been available to consumers purchasing in the computer security products market. This caused the court to grant a new trial on damages.

On December 14-15, 2005, the court tried the damages case, restricted to sales of the Key Lock, to a second jury. That jury reached a verdict which awarded the plaintiff a reasonable royalty against Defendant ABA Locks of $1,822,000 and against Defendant Belkin of $253,000. The court overruled the defendants' motions for judgment as a matter of law and for new trial arising out of the damages trial.

The court also tried the defendant's claim of inequitable conduct to the bench outside the presence of the jury. In this opinion, the court will first address the question whether the '989 patent is unenforceable for inequitable conduct. Then the court will address the question whether the case is exceptional and to what extent attorneys fees and enhanced damages are proper. The court holds that the defendants have not established inequitable conduct during the prosecution of the '989 patent. Based on the finding of willful infringement, the court declares the case exceptional,

enhances damages, and awards attorneys' fees and costs. A judgment and permanent injunction have also issued contemporaneously with this opinion and order.

**2.     Discussion.**

The court will treat this memorandum opinion and order as its findings of fact and conclusions of law under Rule 52. Any finding of fact that is a conclusion of law should be treated as such. Any conclusion of law that is actually a finding of fact should be treated as such.

### A.     Inequitable Conduct.

The issues of inequitable conduct were tried to the court. Inequitable conduct occurs when a patent applicant breaches the "duty of candor and good faith" to the PTO. *Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd.*, 394 F.3d 1348, 1351 (Fed. Cir.2005). Inequitable conduct includes "affirmative misrepresentation of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive." *CFMT, Inc. v. Yieldup Int'l Corp.*, 349 F.3d 1333, 1340 (Fed. Cir.2003) (*quoting Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed.Cir.1995)). A party asserting inequitable conduct must show materiality and intent by clear and convincing evidence. *Id.* Once these have been proven, the court must weigh these factors in light of all of the circumstances to determine whether a finding that inequitable conduct occurred is warranted. *Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1363 (Fed.Cir.2003) *(citing Purdue Pharma L.P. v. Boehringer Ingelheim GMBH*, 237 F.3d 1359, 1366 (Fed.Cir.2001)). The showing of intent may be less if the materiality of the information is high. *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226, 1234 (Fed. Cir.2003).

Under these standards, the court rejects the defendants' arguments that the patent is unenforceable for inequitable conduct. The defendants make two arguments concerning inequitable

conduct. First, the defendants contend that the patentee made an improper claim of priority during a re-examination involving the '989 patent. Second, the defendants contend that the patentee withheld material prior art from the examiner. The court will address each contention.

The defendants contend that the plaintiffs incorrectly claimed the same priority date for all of the claims of the '989 patent during the reexamination of the '989 patent. In particular, the defendants assert that the sequencing limitation involved in some of the independent claims results in a priority date of October 15, 1993, rather than January 24, 1992. The defendants note that in this case, the plaintiff is maintaining it is entitled to priority only from October 15, 1993. During the reexamination, however, the defendants contend that the applicant mislead the examiner into believing that the priority date for all claims was January 24, 1992.

The proper priority date is of course material. The change in priority date would affect the scope of prior art assertable against some of the claims. For this reason, this court may assume, in Mr. Williams' words, that the different priority date "should have been pointed out" to the examiner. Nevertheless, as the plaintiff observes, the examiner was well aware that a continuation-in-part application was involved and she considered prior art submitted by the patentee which post-dated January 24, 1992. The patent examiner and attorneys practicing before the PTO are well aware of the significance of a continuation-in-part application. The court declines to find, on this record, that the patentee intentionally acted to deceive the examiner by failing to disclose that certain limitations of certain claims were not entitled to a priority date of January 24, 1992.

Likewise, the court rejects the defendants' argument that the patentee intentionally failed to disclose material prior art. The defendants suggest that, in connection with the failure to point out the proper priority date, the applicant withheld its sale of the Microsaver devices and other patent

applications.  These positions are rejected.  The defendants have not shown by clear and convincing evidence that the applicant acted with culpable intent.  The court has carefully reviewed the record submitted in connection with the inequitable conduct defense and finds that the defendants have not established the elements of that defense.  The court accordingly rejects the defendants' arguments that the enforcement of the '989 patent is barred by inequitable conduct.

   B.  **Willfulness/Other issues**.

The jury found willful infringement.  Based on that finding, the court declares the case exceptional pursuant to 35 U.S.C. § 285.  *Union Carbide Chem. & Plastics Tech. Corp. v. Shell Oil Co.*, 425 F.3d 1366, 1372 (Fed. Cir. 2005).  In general, when a jury finds willful infringement, an enhancement of damages is appropriate.  *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992), *abrogated on other grounds*, *Markman v. Westview Inst., Inc.*, 52 F.3d 967 (Fed. Cir. 1995)(en banc), *aff'd*, 517 U.S. 370 (1996).  *Read* counsels the court to consider such factors as (1) whether the infringer deliberately copied the ideas of another; (2) whether the infringer investigated the scope of the patent and formed a good faith belief that it was invalid or not infringed; (3) the infringer's behavior as a party to the litigation; (4) the defendant's size and financial condition; (5) the closeness of the case; (6) the duration of the defendant's misconduct; (7) remedial action by the defendant; and (8) the defendant's motivation for harm.

The court has considered these factors and holds that enhanced damages are appropriate.  In particular, the defendants compete against the plaintiff in the same market, there is evidence that ABA Locks knew that the devices were capable of operation in an infringing manner, and there is little evidence of remedial action by the defendants.  In determining the amount of enhanced damages, the court has considered the evidence in light of each defendant's activities in connection

with this case, bearing in mind the fact that a manufacturer and a distributor are involved and the evidence involving each is different.

The court will award treble damages against ABA Locks, based primarily on the "hang card" evidence which suggested that the product should be operated in an infringing manner. Although ABA Locks has suggested that the hang card was not distributed to users, this evidence demonstrates that ABA Locks knew that the accused product would (and should) be used in the mode of operation found to be infringing. It bears mention that two different juries have, through their damages announcements, impliedly found the same thing. What this evidence demonstrates is that ABA Locks chose to change the literature associated with the lock but not the lock itself. This shows a culpable mental state. The court emphasizes that this is not an inducement case founded solely on product literature distributed with a device capable of multiple, non-infringing modes of operation. Rather, in this case, the accused lock lends itself to operation in an infringing manner.

Belkin stands on somewhat different ground. Although the evidence is sufficient to support the finding of willfulness and enhanced damages, there is no evidence that Belkin knew of the hang card or was involved in its preparation. The court will limit the award of damages against Belkin to two times the actual damages found by the jury.

Based on the court's findings and conclusions, the court has rendered a final judgment and a permanent injunction in accordance with this decision. The judgment includes prejudgment interest at a rate of 4.5%, compounded annually, on the amounts of actual damages awarded against each defendant. The court has computed prejudgment interest against ABA Locks from January 2000. The court has computed such interest against Belkin from May 2002. Based on the finding of willfulness and the exceptional case finding, the court awards the plaintiff its attorneys' fees and

costs incurred in this case. The plaintiff's application for attorneys' fees and costs shall be submitted in accordance with the rules.

**3.     Conclusion.**

This opinion resolves the balance of the issues in this case, save and except the issues relating to attorney's fees. Those issues will be addressed in connection with any application made pursuant to this order.

SIGNED this 28th day of March, 2006.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE